IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| PETER J. MOSETI, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:25-CV-00358-MJT-CLS |
| § | |
| COLLIN COLLEGE, ROBERT § | |
| PEVEHOUSE, CHARLES WALTZ, § | |
| TODD DOUGHERTY, SANDRA § | |
| ESCALANTE, G'ANNA SAUNDERS, § | |
| and CHRISTOPHER EYLE, § | |
| § | |
| *Defendant*. § | |

**ORDER ADOPTING IN PART THE REPORT AND**
**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the Honorable Christine L. Stetson, United States Magistrate Judge, to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. TEX. LOC. R. CV-72.

**I. Background**

On October 7, 2025, Judge Stetson issued a Report and Recommendation [Dkt. 79] recommending this Court grant the Motion to Dismiss of Defendants Robert Pevehouse, Charles Waltz, Todd Dougherty, Sandra Escalante, G'Anna Saunders, and Christopher Eyle [Dkt. 64]; and grant in part and deny in part the Motion to Dismiss of Defendant Collin County Community College District [Dkt. 24]. In short, Judge Stetson recommended dismissing all *pro se* Plaintiff Peter J. Moseti's claims except his Title VII retaliation claim against Collin College. [Dkt. 79 at 21]. Plaintiff and Collin College objected within the time permitted by 28 U.S.C. § 636(b)(1)(C).

**II. Legal Standard**

A party who timely files specific, written objections to a magistrate judge's report and recommendation is entitled to a *de novo* determination of the findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2)–(3). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. "Frivolous, conclusive or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1412 (5th Cir. 1996) (en banc).

**III. Plaintiff's Objections to the Report and Recommendation**

*A. Plaintiff's improper filings*

In response to Judge Stetson's Report and Recommendation, Plaintiff filed a "Motion for Leave to Exceed Page Limits for Objections and to File Integrated Second Amended Complaint" [Dkt. 80] and an accompanying "Objection to Report and Recommendation and in the Alternative, Second Amended Complaint" [Dkt. 81]. In his motion, Plaintiff requests leave to file 11-page objections, exceeding the eight-page limit in Local Rule CV-72(c). [Dkt. 80 at 1]. He also asks for permission to file a second amended complaint "as part of the same document (or, alternatively, as a separately docketed exhibit to the objections)." [*Id.*].

In line with Local Rule CV-7(k), Plaintiff did file his objections/proposed complaint immediately after the motion for leave. *See* [Dkt. 81]. The portion of that document comprising his objections spans only four-and-a-half pages. [*Id.* at 1–5]. The part that is his proposed second

amended complaint begins on page five and runs until the end of the document. [*Id*. at 5–10]. Since Plaintiff's objections do not exceed the page limit in Local Rule CV-72(c), his request for leave to file objections exceeding that limit is DENIED as moot.

Regarding his request for leave to amend, Plaintiff's motion violates Local Rule CV-7(a). Although styled as a motion for alternative relief, Plaintiff's requested relief is not alternative. The Court could grant both requests, so they should have been set out in separate motions. Moreover, Plaintiff's proposed amendment was premature. He claims that the "R&R expressly invite[d] Plaintiff to cure pleading deficiencies." [Dkt. 80 at 2]. It did not. It suggested giving leave to amend, but only if this Court adopted that recommendation. [Dkt. 79 at 22]. Plaintiff was not "expressly invited" to cure his pleading deficiencies just yet, so he should not have filed his proposed second amended complaint.

In fact, "failing to request leave from the court when leave is required" renders "amended pleadings filed without leave of court" as "having no legal effect." *United States ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane (Wright & Miller), *Federal Practice & Procedure* § 1484, at 601 (1990)). Typically, the Court would strike an improper document filed after a motion for leave. *See* E.D. TEX. LOC. R. CV-7(k). However, courts can still give legal effect to proposed amended complaints filed without leave if "leave would have been granted had it been sought" and "the plaintiff could still re-file the complaint without prejudicing another party." *Mathews*, 332 F.3d at 296–97. Although prejudice was found in *Mathews*, the Fifth Circuit expressly sanctioned a district court's decision to "consider[] [an] amended complaint filed even though the plaintiff never requested leave" when "it was more procedurally expedient to consider the complaint filed than to

3

strike the amended complaint and then grant leave to file another complaint that raised the exact same issues," especially since "the parties would be in the same position regardless." *Id*.

Here, the Court finds it "procedurally expedient" to consider the second half of docket entry 81 as Plaintiff's proposed second amended complaint. No Defendant objected to Judge Stetson's recommendation to grant leave, and granting leave would not affect any rights of the parties,[1] so amendment should not prejudice anyone. Accordingly, despite violating Local Rule CV-7(a), the Court will consider Plaintiff's Motion for Leave to File a Second Amended Complaint at the conclusion of this Order. *See infra* section V.

Before that, though, the Court addresses Plaintiff's objections, which, again, comprise the first four-and-a-half pages of docket entry 81. [Dkt. 81 at 1–5].

### B. Plaintiff's § 1983 claims

Plaintiff objects to Judge Stetson's findings that he failed to plausibly allege that any individual Defendant violated the Fourteenth Amendment's prohibition against discriminatory treatment in public employment. [*Id*. at 2; Dkt. 79 at 7–12]. Plaintiff "[r]espectfully" asserts that Judge Stetson "overlook[ed] concrete facts demonstrating race-based selective enforcement." [Dkt. 81 at 2 (emphasis removed)]. In support, Plaintiff provides facts relating to each individual Defendant's treatment of him. [*Id*. at 2–4]. But these facts do not appear in Plaintiff's Amended Complaint. They might appear in his other motion-to-dismiss briefing, but as Judge Stetson said in the Report and Recommendation, she was "not permitted to consider those facts in [her] review" because they were not included in Plaintiff's Amended Complaint. [Dkt. 79 at 21]. Similarly, the

---

[1] Denying leave to amend would substantially affect Plaintiff's rights. If the Court treats his proposed second amended complaint as properly filed, its filing date is October 7, 2025. E.D. TEX. LOC. R. CV-7(k); *Mathews*, 332 F.3d at 296–97. If the Court instead strikes it, Plaintiff's road to amending becomes much more difficult. As his deadline to file amended pleadings passed on October 27 [Dkt. 58 at 1], Plaintiff would need to first move the Court to modify this case's scheduling order, which can be done "only for good cause," before the Court could entertain his request for leave to amend. *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (referencing 6A Wright & Miller, *Federal Practice & Procedure* § 1522.1 (2d ed.1990)).

Court here will not consider these new allegations because analyzing whether Plaintiff stated a claim only looks to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Therefore, the Court reviews *de novo* whether Plaintiff has plausibly alleged a § 1983 claim against each individual Defendant based on the same record as Judge Stetson. And after that review, the Court similarly finds that Plaintiff failed to state such claims against each Defendant. Plaintiff's objections are OVERRULED. The recommendation to dismiss the § 1983 claims against the individual Defendants is ADOPTED.[2]

### C. Plaintiff's Title VII disparate-treatment and hostile-work-environment claims

Plaintiff notes that he objects to Judge Stetson's recommendation to deny his Title VII disparate-treatment claim [Dkt. 81 at 1]. Otherwise, he does not brief it. He simply relies on his newly listed allegations; but, as stated above, the Court cannot consider those. Accordingly, his disparate-treatment claim fails because Plaintiff's Amended Complaint does not allege that anyone's treatment of him was racially motivated. [Dkt. 79 at 15–16].

Plaintiff last takes issue with Judge Stetson's recommendation to deny his Title VII hostile-work-environment claim. [Dkt. 81 at 4–5]. Plaintiff claims that his "complaint alleges a work environment charged with racial favoritism" that "is plausibly severe or pervasive." [*Id*. (emphasis removed)]. Plaintiff misreads Judge Stetson's Report and Recommendation. Judge Stetson did find that Plaintiff's Amended Complaint alleged a pervasively hostile environment. [Dkt. 79 at 17]. What she did not find was that Plaintiff alleged any of the workplace's harassment was "because of his race." [*Id*.]. A fresh look at Plaintiff's pleading leads the Court to agree.

---

[2] As is the recommendation to deny his *Monell* claim against Collin College. Plaintiff is correct that the Board's firing of him "constitute[s]" policymaker action [Dkt. 81 at 4], but he did not allege that it was done because of his race.

Plaintiff's objections to dismissal of these two claims are OVERRULED. The recommendations to dismiss his Title VII disparate-treatment and hostile-work-environment claims are ADOPTED.

**IV. Collin College's Objection**

Collin College "objects to the Report and Recommendation with respect only to Plaintiff's Title VII retaliation claim." [Dkt. 82]. Judge Stetson found that Plaintiff plausibly alleged this claim because (1) Plaintiff "engaged in a protected activity" by filing an internal workplace complaint that opposed "a practice made unlawful by Title VII;" (2) Plaintiff "suffered an adverse employment action" when he was fired; and (3) Plaintiff's firing was "causal[ly] connect[ed]" to the filing of his internal complaint. [Dkt. 79 at 18–20 (quoting *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020); *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016))]. Collin College specifically objects to Judge Stetson's finding that Plaintiff's internal complaint opposed a practice made unlawful by Title VII.[3] [Dkt. 82 at 4].

The internal complaint is Title VII-protected activity so long as it "oppos[ed] a practice made unlawful by Title VII." *EEOC*, 819 F.3d at 240. Importantly, the complained-of practice need not actually violate Title VII; the plaintiff just needs to "reasonably believe[]" it did. *Id*. Judge Stetson found that Plaintiff's internal complaint was Title VII protected because it included allegations of racial discrimination in the workplace, which Title VII makes unlawful. [Dkt. 79 at 19]. Collin College "maintains" that nothing supports finding "that Plaintiff filed an internal complaint about racial discrimination in employment." [Dkt. 82 at 4].

---

[3] In a footnote, Collin College seems to suggest an objection to Judge Stetson's finding of a causal connection between Plaintiff's firing and his internal complaint. [Dkt. 82 at 2 n.1]. But its argument rests on attacking the specificity of Plaintiff's allegations about the complaint, just as it argued initially [Dkt. 24 at 17–18], so it is OVERRULED because simply reasserting the arguments made to the magistrate judge is "no better than a complete failure to object." *SciCo Tec GmbH v. Bos. Sci. Corp.*, 599 F.Supp.2d 741, 743 (E.D. Tex. 2009).

Plaintiff alleges that he submitted an "internal . . . complaint[]" that was "written" and "about Pevehouse." [Dkt. 18 at ¶¶27, 19]. Other than that, it is unclear what exactly "about Pevehouse" Plaintiff included in his internal complaint. *See* [*id*.]. This "failure to specify the substance of his alleged internal complaints about Pevehouse," Collin College asserts, "is fatal to his retaliation claim." [Dkt. 82 at 5]. In support, Collin College cites *Lopez v. AT&T Mobility Services LLC*, which dismissed "the plaintiff's retaliation claim based on its finding that the plaintiff did not plausibly allege that he engaged in protected activity." [*Id*. at 4]. In *Lopez*, the court found that an internal complaint about a manager's "ineffective leadership" was not protected activity because "ineffective leadership" is not unlawful under Title VII. 767 F.Supp.3d 406, 432 (W.D. Tex. 2025). However, there was a second internal complaint in *Lopez* that "[did] constitute protected activity, because it reference[d] unlawful activity under Title VII." *Id*. Although vague, the *Lopez* court found the second internal complaint Title VII-protected because it referenced "sexual harassment and retaliation by [plaintiff's colleague]." *Id*.

Here, Plaintiff's internal complaint is similarly vague, but it was "about Pevehouse." And like Judge Stetson found, Plaintiff's Amended Complaint alleges that Pevehouse "repeatedly targeted Black employees, including Plaintiff, through differential treatment[] [and] micromanagement" that he believed "enabled ongoing racial discrimination." [Dkt. 18 at ¶¶8, 7]. Judge Stetson did not "strain" to infer that Pevehouse's alleged conduct was included in Plaintiff's internal complaint "about Pevehouse." [Dkt. 82 at 5]. To the extent Plaintiff's allegations seem conclusory, the allegations in *Lopez* of "sexual harassment and retaliation" do as well, but they still supported finding that the plaintiff had a good-faith belief that the complained-of conduct was unlawful under Title VII. Collin College's objection is OVERRULED. The recommendation that Plaintiff's Title VII retaliation claim should survive dismissal is ADOPTED.

7

### V. Leave to Amend

Finally, the Court returns to Plaintiff's ability to amend his complaint. As discussed above, *supra* section III.A, the Court entertains Plaintiff's improper request primarily in the interest of judicial economy. *See Mathews*, 332 F.3d at 296.

#### A. Standard for amendment

Once a party can no longer amend their pleading as a matter of course, they "may amend [it] only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). But "[t]he court should freely give leave when justice so requires." *Id*. However, although "there is a strong presumption in favor of granting leave to amend," *N. Collin Special Util. Dist. v. City of Princeton*, 696 F.Supp.3d 254, 270 (E.D. Tex. 2023) (quoting *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006)), "[w]hether leave to amend should be granted is entrusted to the sound discretion of the district court." *Gallentine v. Hous. Auth. of Port Arthur*, 919 F.Supp.2d 787, 816 (E.D. Tex. 2013) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). As such, the district court may "refuse leave to amend if the complaint as amended would be subject to dismissal," *id*. at 817, or, in other words, if amendment would be "futile." *N. Collin Special Util. Dist.*, 696 F.Supp.3d at 270.

Leave to amend is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Id*. So "the standard for whether amendment would be futile is 'the same standard of legal sufficiency as applies under Rule 12(b)(6).'" *Lopez*, 767 F.Supp.3d at 436. The 12(b)(6) standard is slightly forgiving, but the party seeking to amend must still "set forth with particularity the grounds for the amendment." *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 331 (5th Cir. 2003). This is typically accomplished by "suggest[ing] . . . additional facts not initially pleaded that could . . . cure the pleading defects" identified. *Bailey v. Mansfield Indep.*

8

*Sch. Dist.*, 425 F.Supp.3d 696, 727 (N.D. Tex. 2019). But "'if a complaint as amended could not withstand a motion to dismiss, then the amendment should be denied as futile.'" *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) (quoting Wright & Miller, *Federal Practice & Procedure* § 1489 (2d ed. 1990)). *See also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (noting that "pleading review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right").

### B. Whether amendment would be futile or fruitful

With the benefit of Plaintiff's proposed pleading, the Court now assesses which defects, if any, Plaintiff could cure. The court addresses each of Plaintiff's claims in the same order as the Report and Recommendation.

#### 1. Pevehouse

Judge Stetson recommended dismissing Plaintiff's § 1983 claim against Pevehouse because Plaintiff had not alleged a comparator, or an inference that Pevehouse treated Plaintiff differently because of Plaintiff's race. [Dkt. 79 at 8]. Plaintiff has now specifically identified a white comparator ("Dean"). [Dkt. 81 at 6]. And Plaintiff's allegations that Pevehouse selectively enforced time rules and provided desks only to white workers like Dean plausibly state differential treatment. Plaintiff must now raise a discriminatory motive behind such treatment. He has.

Plaintiff clarifies that Pevehouse also "spread false, racially charged statements" about Plaintiff to Plaintiff's coworkers. [Dkt. 81 at 6]. Further, Pevehouse allegedly "fabricated performance issues" in order to subject Plaintiff to adverse employment actions such as probation. [*Id*.]. Plaintiff does not explicitly say that Pevehouse treated him differently because of Plaintiff's race, but his new facts allow that inference. If Pevehouse was spreading rumors with racial connotations about Plaintiff among Plaintiff's coworkers at the same time he was providing

9

workplace benefits to only white coworkers (which the Court must accept as true), it plausibly suggests that Pevehouse's actions were in part motivated by racial animus. Under a 12(b)(6) standard, this claim has been cured.

### 2. Waltz

Plaintiff failed to state a claim against Waltz because the only potentially discriminatory treatment he identified from Waltz was not directed at him. [Dkt. 79 at 9]. Plaintiff has amended his allegation about Waltz's treatment of "Black staff" to include himself [Dkt. 81 at 6], but Plaintiff has again not alleged any motivation behind Waltz's actions, let alone a discriminatory one. Amendment would be fruitless as Plaintiff's best case against Waltz does not state a claim.

### 3. Dougherty

Plaintiff's claim against Dougherty failed as pleaded because he gave no detail about the person who replaced Plaintiff after Collin College fired him. [Dkt. 79 at 10]. As Judge Stetson pointed out, if Plaintiff was replaced by a person of a different race, it could suggest a discriminatory intent behind his firing. [*Id.*]. In his new allegations, however, Plaintiff reveals that his replacement was the same race as him [Dkt. 81 at 7], and thus he does not save this claim.

### 4. Escalante

Plaintiff claims Escalante allegedly engaged in pay discrimination, but it was not directed at him so it cannot have violated his rights. [Dkt. 79 at 10]. As to this "escalat[ed] harassment" from her, Plaintiff's allegations suggest that any harassment from Escalante was in response to Plaintiff's involvement with his coworker's pay complaint, not Plaintiff's race.[4] [Dkt. 81 at 7].

---

[4] If any harassment from Escalante constituted differential treatment, it would only violate Plaintiff's rights under the equal-protection clause if it "stemmed from a discriminatory intent," which he has not alleged. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015). Otherwise, "the Equal Protection Clause does not preclude workplace retaliation." *Matthews v. City of West Point*, 863 F.Supp.2d 572, 612 (N.D. Miss. 2012). Retaliation that stemmed from complaints about pay disparity might violate Title VII, see, *e.g.*, *Wilder v. Stephen F. Austin State Univ.*, 552 F.Supp.3d 639, 661–62 (E.D. Tex. 2021), but "it is well established that [non-employer] 'individuals are not liable under Title VII.'" *Weathers v. Hous. Methodist Hospital*, 116 F.4th 324, 328 n.2 (5th Cir. 2024).

### 5. Saunders

Plaintiff's claim against Saunders is incurable because Plaintiff does not allege any conduct of hers that violated his rights. Accepting that Saunders's choice to discipline Plaintiff's black coworker but not his white coworker was racially discriminatory differential treatment, Plaintiff's claim against Saunders still fails because Plaintiff makes no allegation that Saunders directed any Constitution-violating conduct at Plaintiff, only towards his coworkers. [Dkts. 79 at 11; 81 at 7].

### 6. Eyle

The renewed allegations against Eyle, that he authorized Plaintiff's transfer to a different supervisor, termination, and flagging as "ineligible for rehire," are even less suggestive of a Fourteenth Amendment violation than the previous ones that failed to state a claim for relief were. *Compare* [Dkt. 81 at 7–8] *with* [Dkt. 18 at ¶¶23–25]. Judge Stetson's Report and Recommendation also afforded Plaintiff the benefit of considering potential due-process claims against Eyle [Dkt. 79 at 11–12], but Plaintiff does not pursue these claims in his proposed second amended complaint.

### 7. Collin College

The Court first assesses whether Plaintiff has cured his *Monell* claim against Collin College before turning to the claims under Title VII.

#### *a.* Monell *liability*

"[W]ith respect to hiring, firing, compensation, or the 'terms, conditions, or privileges of employment,'" Collin College could only be liable under § 1983 for Plaintiff's termination because that is the only action carried out by the Board. *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023); *see* [Dkt. 79 at 13–14]. Although he points to specific comparators, Plaintiff still fails to allege that Collin College fired him because of his race. [Dkt. 81 at 8]. If anything, Collin

11

College fired him because of internal complaints—either his involvement in his coworker's pay complaint or Plaintiff's own internal one—not because of his race. The *Monell* claim is incurable.

### b. Title VII disparate treatment

For the same reason as the *Monell* claim, the Title VII disparate-treatment claim is incurable because Plaintiff does not allege Collin College fired him because of his race.

### c. Title VII hostile work environment

Judge Stetson's Report and Recommendation found that Plaintiff alleged all elements of his Title VII hostile-work-environment claim except that "the harassment was based on" Plaintiff's race. [Dkt. 79 at 16–17]. As said above, however, Plaintiff has cured his allegations to support an inference that at least Pevehouse harassed Plaintiff because of Plaintiff's race. Whether his pleading ultimately supports a legal conclusion that the workplace was sufficiently hostile is a question for another day. For now, he has cured this claim's pleading defect.

### d. Title VII retaliation

In his proposed second amended complaint, Plaintiff merely "[p]reserves as already sustained by the Court" his Title VII retaliation claim. [Dkt. 81 at 9]. He does not explicitly discuss the internal complaint about Pevehouse upon which his retaliation claim rested. Plaintiff simply "re-allege[s]" the claim "to maintain continuity." [*Id*.].

This could be problematic for Plaintiff because "[o]nce an amended pleading is interposed, the original pleading no longer performs any function in the case." 6 Wright & Miller, *Federal Practice & Procedure* § 1476 (3d ed. 2025). Moreover, the original pleading typically "cannot be utilized to cure defects in the amended pleading." *Id*. It "may adopt some or all of the averments of the original pleading in conformity with the incorporation by reference practice permitted by Rule 10(c)," but "the identification of the particular allegations to be incorporated must be direct,

clear, and explicit." *Id*. "This is particularly important because once the original pleading is amended it no longer is part of the action and an incorporation of some of its allegations may be confusing unless carefully set forth." *Id*.

Plaintiff's incorporation of his Title VII-retaliation-related facts is not really "direct, clear, and explicit." But he is proceeding *pro se*, and this Court is taking a discretionary approach to his request to amend, so it will give him some leeway. As such, in moving forward in this action, the "re-alleged" facts referenced under "Count III" incorporate only the following facts from Plaintiff's First Amended Complaint: paragraphs 27 and 28 on page four, and paragraph 19 on page three to the extent it clarifies that the internal complaint was "about Pevehouse." *See* [Dkt. 18]. Any other operative facts "about Pevehouse" are limited to those in Plaintiff's proposed second amended complaint.

*C. Conclusion regarding amendment*

Amendment is futile with respect to some of Plaintiff's claims. The Court will dismiss those. Instead of allowing Plaintiff to amend, however, in the interest of efficiency the Court partially GRANTS Plaintiff's request to have his proposed second amended complaint docketed as his new operative pleading [Dkt. 80 at 1]. However, given the formatting overlap between his objections and his proposed pleading, the Court will order Plaintiff to restyle pages five through ten as his Second Amended Complaint and file it with the Clerk of Court.

**VI. Conclusion and Order**

Judge Stetson's Report and Recommendation [Dkt. 79] is ADOPTED in part. The court adopts all recommendations except for granting leave to amend. Accordingly, Collin College's Motion to Dismiss [Dkt. 24] is GRANTED in part and DENIED in part and the individual Defendants' Motion to Dismiss [Dkt. 64] is GRANTED except as to Defendant Pevehouse.

13

Next, Plaintiff's Objections/Motion for Leave [Dkt. 80] is GRANTED in part and DENIED in part. Plaintiff's request for leave to file objections exceeding the page limit is DENIED as moot. His motion for leave to file a second amended complaint is GRANTED in part. Plaintiff is ORDERED to re-file the portion of docket entry 81 beginning with the heading on page five that reads "III. IN THE ALTERNATIVE: SECOND AMENDED COMPLAINT" and concluding at the end of the document. The re-filed document must be an exact copy of what appears in that half of docket entry 81.[5] Once filed, it will function as Plaintiff's Second Amended Complaint.

As discussed, some of Plaintiff's claims are futile. Thus, Plaintiff's § 1983 claims against all individual Defendants except Robert Pevehouse are DISMISSED WITH PREJUDICE. Plaintiff's *Monell* claim and his Title VII race-discrimination claim against Collin College are also DISMISSED WITH PREJUDICE. Plaintiff's remaining claims are henceforth limited to his § 1983 equal-protection claim against Pevehouse and his Title VII hostile-work-environment and retaliation claims against Collin College.

IT IS SO ORDERED.

**SIGNED this 5th day of November, 2025.**

Michael J. Truncale
United States District Judge

---

[5] If Plaintiff makes any changes to the re-filed version beyond the case caption, signature, and certificate of service, the Court will strike the document.